UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JULIE REGO, | ) |
| Plaintiff, | ) CASE NO. C05-1508RSM |
| v. | ) ORDER GRANTING MOTION |
| SASCO ELECTRIC, INC., | ) FOR SUMMARY JUDGMENT |
| Defendants. | ) |

## **INTRODUCTION**

This matter comes before the Court on defendant's motion for summary judgment asking the Court to dismiss plaintiff's sexual harassment and retaliation claims under both federal and Washington State law. (Dkt. #12). Defendant argues that there is no basis for liability on any of plaintiff's claims because plaintiff failed to report her allegations of sexual harassment during the period it was allegedly taking place, when she did report her allegations defendant took prompt investigative action and separated her from the alleged harrasser, there was a valid, non-discriminatory reason for reducing her work hours, and plaintiff rejected a subsequent unconditional reinstatement offer.

Plaintiff responds that there are numerous issues of material fact, and therefore summary judgment is not appropriate. (Dkt. #18). For the reasons set forth below, the Court disagrees with plaintiff and GRANTS defendant's motion for summary judgment.

ORDER
PAGE – 1

# DISCUSSION

**A. Background**

This action arises from plaintiff's termination of employment with defendant in September of 2003. Plaintiff was initially hired by defendant as an Apprentice Technician. She eventually became a Journeyman Technician, with specialized skill in the field of fiber optics.

During her fiber optics training, plaintiff worked alongside Mr. Alex Danilyuk. Mr. Danilyuk had been employed by defendant for several years as a fiber optics installer. Plaintiff and Mr. Danilyuk were assigned to a job at SeaTac airport, known as the "Airport C4" job. Defendant asserts that plaintiff and Mr. Danilyuk were co-workers on that job, and Mr. Danilyuk did not have the ability to hire or fire plaintiff, or the ability to otherwise discipline her. Plaintiff asserts that Mr. Danilyuk was her direct daily supervisor, as he was the Fiber Foreman on the project, and she assisted him and reported directly to him on a daily basis. She acknowledges that Mr. Danilyuk did not have the ability to terminate or discipline her, but asserts that he did have the authority to recommend termination or disciplinary action to SASCO Superintendent, Troy Tungate.[1] While on the C4 job, both plaintiff and Mr. Danilyuk reported to Scott Ibach, the Field Foreman. Mr. Ibach reported to General Foreman, Joe Rego, who was also plaintiff's fiancé at the time. Mr. Rego reported to Mr. Tungate.

Prior to the C4 job, from June 2002 to December 2002, plaintiff worked with Mr. Danilyuk on just a few occasions. However, during those occasions, she noticed that Mr. Danilyuk often made demeaning comments about women and stated that he did not believe women should be working in the construction trade. Plaintiff mentioned these comments to a co-worker, Jaclyn Miller, who told plaintiff that she had complained about Mr. Danilyuk in the past, which resulted in disciplinary action. Ms. Miller also apparently informed plaintiff that Mr.

---

[1] Plaintiff admits that under the International Brotherhood of Electrical Workers ("IBEW") contract by which she was governed, Mr. Danilyuk was not her supervisor, he was her co-worker.

ORDER
PAGE – 2

Danilyuk retaliated by making complaints about Ms. Miller's behavior. Ms. Miller expressed the belief that if plaintiff was to complain about Mr. Danilyuk's comments, he would also retaliate against her, and defendant would protect Mr. Danilyuk anyway. There is no evidence that plaintiff made any complaints to her supervisors during that time period regarding Mr. Danilyuk's statements.

From January 2003 to July 17, 2003, plaintiff worked with Mr. Danilyuk on a daily basis at the C4 job. During that time, Mr. Danilyuk would comment that women should work in the kitchen, not in construction, or that women should be at home to support their men. When plaintiff told Mr. Danilyuk that his comments offended her, he would laugh and say that was how things were in Russia, from which he had recently immigrated. He also apparently referred to all women as bitches and sluts.

Plaintiff often complained about this behavior to Mr. Rego. However, she did not make any formal complaints to defendant, and did not ask Mr. Rego to make any complaints because she did not want to interfere with his employment relationship with defendant. She was also scheduled to complete her apprenticeship in May 2003, and believed things would get better for her after she became a Journeyman.

After plaintiff became a journeyman technician, Mr. Danilyuk's comments and behavior began to escalate. Not only did he complain about the fact that she was making more money than he was, he began to prevent plaintiff from using the tools necessary to do their work on the job site. Eventually his behavior became physical, when he would slap her hands as she attempted to take a tool out of the tool kit. He would also make demeaning comments about her in a loud voice around her co-workers, accusing her of breaking tools or not being able to do her job well. Plaintiff asserts that Mr. Danilyuk never treated any male co-workers in this manner.

In June of 2003, plaintiff complained that Mr. Danilyuk was not allowing her to use tools on the job site, which was preventing her from doing her job. There is no evidence that she

ORDER
PAGE – 3

made any reference to sexual harassment at that time. Mr. Danilyuk was reprimanded by Mr. Tungate, and things improved for a short period of time. However, on July 11, 2003, Mr. Danilyuk again began to prevent plaintiff from using tools on the job site. Plaintiff became upset with Mr. Danilyuk and expressed this to another co-worker, Clinton Olsen. Mr. Ibach also noticed that plaintiff was upset and asked her what had been happening. Plaintiff told him that Mr. Danilyuk was continuing to prevent her from using necessary tools, and that she felt demeaned and degraded by Mr. Danilyuk's comments. Specifically, she told Mr. Ibach that Mr. Danilyuk had said things to the effect that if she had sex with Mr. Rego he would buy her the tools she needed. Mr. Ibach offered to move plaintiff to another job, but she declined because the job was almost over. She was also afraid that if she moved to another job she would lose her opportunity to learn fiber optic work. That same day, Mr. Ibach informed Mr. Tungate that plaintiff and Mr. Danilyuk were continuing to have problems with tools on the job site. Mr. Tungate again reprimanded Mr. Danilyuk, and there were no further problems for the rest of that week.

On July 16, 2003, Mr. Tungate informed Mr. Rego that Mr. Danilyuk had complained to him about plaintiff's work performance. Mr. Tungate asked Mr. Rego to address those complaints with plaintiff, and to tell plaintiff that he wanted to meet with her the next day to address those complaints. Mr. Rego informed plaintiff about the complaints and also told her she should put all of her own complaints in writing to give to Mr. Tungate.

On July 17, 2003, plaintiff met with Mr. Tungate. After Mr. Tungate explained Mr. Danilyuk's complaints, plaintiff presented him with her notes. He asked her why she had not informed him of any of that before that day, and she responded that she was concerned she would lose her job. She also stated that Mr. Danilyuk's comments were common knowledge throughout the company, and no one else ever seemed to be very concerned.

On July 18, 2003, Mr. Tungate reported plaintiff's complaints to Darlene Schiffler in defendant's Human Resources department. Mr. Tungate also set up separate meetings with

ORDER
PAGE – 4

plaintiff and Mr. Danilyuk for July 21, 2003.  On that day, Mr. Tungate, Ms. Schiffler, and defendant's Group President, Pat Draper, interviewed plaintiff and Mr. Danilyuk.  Ms. Schiffler informed plaintiff that she would be separated from Mr. Danilyuk until the investigation was complete.  She was initially placed at a Boeing Employee Credit Union job.

After meeting with plaintiff and Mr. Danilyuk, who denied harassing plaintiff, Ms. Schiffler met with Mr. Olsen and another co-worker, Brian Ibach.  Both of them denied ever seeing Mr. Danilyuk behave inappropriately towards plaintiff.  Ms. Schiffler ultimately determined that she could not conclude that Mr. Danilyuk had violated defendant's anti-harassment policy.  As a result, defendant cautioned Mr. Danilyuk about his language and behavior, informed plaintiff that she should promptly report any sexual harassment complaints in the future, and separated plaintiff and Mr. Danilyuk from working together.  Mr. Danilyuk was subsequently returned to the C4 job, and plaintiff was moved elsewhere.

During the rest of the summer, work in the construction industry began to slow.  Defendant informed plaintiff that it was going to put her on a reduced work schedule, but that she had the option of being laid off if she preferred.  Plaintiff chose to work reduced hours.  At the same time, defendant moved many other of its employees to reduced schedules, including many employees who were senior to plaintiff.

On September 5, 2003, plaintiff called Mr. Tungate and asked him to issue a layoff so that she could take another job from her union hall.  Defendant complied with that request.  Shortly thereafter, plaintiff filed a union grievance against defendant.

On September 18, 2003, defendant met with plaintiff's union representative and made an unconditional offer of reinstatement.  Defendant also offered to provide plaintiff with back pay up to the date of its offer in exchange for a release of claim.  Plaintiff refused these offers.  On September 24, 2003, defendant again offered plaintiff unconditional reinstatement.  Defendant also offered to give her 192 hours of back pay in exchange for a release of claim.  On September 26, 2003, defendant clarified that its reinstatement offer was unconditional and not related to

ORDER
PAGE – 5


any acceptance of any releases. Plaintiff's union representative recommended that plaintiff accept the offer, but plaintiff declined. In October 2003, plaintiff dropped her union grievance, apparently because she believed both defendant and the union were biased against her.

In November 2003, plaintiff filed an EEOC complaint, alleging sexual discrimination and retaliation by defendant. The EEOC concluded that there was insufficient evidence to demonstrate that defendant had discriminated against plaintiff, or that her layoff was the result of her harassment complaints. The instant action followed.

**B.  Summary Judgment Standard**

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986). The Court must draw all reasonable inferences in favor of the non-moving party. *See F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds,* 512 U.S. 79 (1994). The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. *See Anderson*, 477 U.S. at 257. Mere disagreement, or the bald assertion that a genuine issue of material fact exists, no longer precludes the use of summary judgment. *See California Architectural Bldg. Prods., Inc., v. Franciscan Ceramics, Inc*., 818 F.2d 1466, 1468 (9th Cir. 1987).

Genuine factual issues are those for which the evidence is such that "a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. Material facts are those which might affect the outcome of the suit under governing law. *See id.* In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc*., 41 F.3d 547, 549 (9th Cir. 1994) (citing *O'Melveny & Meyers*, 969 F.2d at 747). Furthermore, conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat

summary judgment. *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 60 F. 3d 337, 345 (9th Cir. 1995). Similarly, hearsay evidence may not be considered in deciding whether material facts are at issue in summary judgment motions. *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 345 (9th Cir. 1995); *Blair Foods, Inc. v. Ranchers Cotton Oil,* 610 F. 2d 665, 667 (9th Cir. 1980).

### C. Improper Sur-Reply

As an initial matter, the Court addresses plaintiff's Sur-Reply. On January 12, 2007, plaintiff filed a 10-page Sur-Reply responding to defendant's motions to strike, which it had presented in its Reply brief. (Dkt. #26). Such Sur-Reply is improper and will not be considered by the Court. This Court's Local Rules do not provide for the filing of a sur-reply, except in specific, limited circumstances. *See* Local Rule CR 7(g). Local Rule CR7(g) provides that a party may file a sur-reply only to request that the Court strike material contained in a Reply brief. The Sur-Reply is to be limited only to the request to strike, and is limited to three pages in length. Local Rule CR 7(g)(2) and (3). Accordingly, the Court *sua sponte* STRIKES plaintiff's Sur-Reply.

### D. Motions to Strike

Defendant has moved to strike certain evidence presented by plaintiff by way of various declarations, on the basis that such evidence is hearsay or is otherwise inadmissible. However, the Court declines to strike the evidence noted by defendant. This Court is well aware of what evidence is admissible on summary judgment, and the standard of review of such evidence. It recognizes that hearsay statements cannot be used to defeat summary judgment, and is also able to determine which arguments are properly supported, which statements lack proper foundation, which statements contain improper legal opinion, and which statements directly contradict previous sworn testimony. The Court will review the evidence accordingly, and will then decide if any of that evidence raises a genuine issue of material fact. Accordingly, it is not necessary for the Court to strike portions of the declarations highlighted by defendant.

ORDER
PAGE – 7

**E. Title VII Discrimination**

   *1. Sexual Harassment*

Plaintiff first claims that defendant subjected her to a hostile work environment through another employee's sexual harassment. To assert a sexual harassment claim under Title VII, the sexual harassment complained of "'must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Ellison v. Brady*, 924 F.2d 872, 876 (9th Cir. 1991) (citation omitted). To prevail under a hostile environment claim, a plaintiff must show that the environment was both objectively and subjectively hostile, that is, that (1) a reasonable person would find the environment hostile or abusive and (2) the victim subjectively perceived her environment to be abusive. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993); *Brooks v. City of San Mateo*, 229 F.3d 917, 924 (9th Cir. 2000) (holding that the victim's allegation that an incident of harassment "pervaded her work environment to such a degree that she required psychological help and even then was unable to successfully return to her job" satisfied the subjective element).

"Whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. Simple teasing, offhand comments, and isolated incidents (unless extremely serious) do not amount to discriminatory changes in the terms and conditions of employment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998); *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1463 (9th Cir. 1994). *Faragher* emphasized that "conduct must be extreme to amount to a change in the terms and conditions of employment." 524 U.S. at 788. Furthermore, it is clear that though harassing conduct or language need not be sexual in nature in order to state a hostile work environment claim under Title VII, the harassment must be based on the victim's gender. *See Hocevar v. Purdue Frederick Co.*, 223 F.3d 721, 737 (8th Cir. 2000); *cf. Ellison*, 924 F.2d at

ORDER
PAGE – 8

875 n.4.

Washington's Law Against Discrimination ("WLAD") tracks the federal law. Accordingly, this Court's analysis will primarily focus on federal law. However, the analysis applies with equal force to plaintiff's WLAD claims against defendant. *Anderson v. Pac. Mar. Ass'n*, 336 F.3d 924, 925 n.1 (9th Cir. 2003) (citing *Payne v. Children's Home Soc'y, Inc.*, 77 Wn. App. 507 (1995)); *see also Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 966 (9th Cir. 2002) (explaining that Washington courts look to federal law when considering sex discrimination and retaliation claims).

As a threshold matter, this Court addresses plaintiff's argument that Mr. Danilyuk was her supervisor. This is important because defendant's liability differs depending on the relationship between plaintiff and Mr. Danilyuk. An employer is vicariously liable "for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee," and certain affirmative defenses to vicarious liability are available to defendants in that situation. However, an employer is liable for a co-worker's harassment only if, after the employer learns of the alleged conduct, he fails to take adequate remedial measures. *Yamaguchi v. Dept. of the Air Force*, 109 F.3d 1475, 1483 (9th Cir. 1997).

There is no dispute in this case that Mr. Danilyuk did not have the authority to hire or fire plaintiff, nor could he take any direct disciplinary action against plaintiff. Indeed, plaintiff referred to Mr. Danilyuk in her EEOC complaint as her co-worker, and acknowledges in this action that Mr. Danilyuk is not considered to be her supervisor under the IBEW contract in effect at that time. However, plaintiff now asserts that Mr. Danilyuk was her supervisor for purposes of Title VII because he directed her work on a daily basis and he could recommend tangible employment decisions. After reviewing the record in this case, the Court is not persuaded.

In *Lamb v. Household Credit Servs.*, 956 F. Supp. 1511 (N. D. Cal. 1997), the district court undertook an extensive analysis of who qualified as a supervisor or management for

ORDER
PAGE – 9

purposes of Title VII vicarious liability. The court explained that a "supervisor" possesses substantial authority and discretion to make decisions concerning the terms of the harasser's or harassee's employment. *Lamb*, 956 F. Supp. at 1517. Relying on *Lamb*, the Ninth Circuit Court of Appeals has consistently explained that an employee is a supervisor if he or she possesses "'substantial authority and discretion to make decisions concerning the terms of the harasser's or harassee's employment,' such as 'authority to counsel, investigate, suspend, or fire the accused harasser, or to change the conditions of the harassee's employment.'" *Swinton v. Potomac Corp.*, 270 F.3d 794, 804 (9th Cir. 2001).

In this case, there is no evidence that Mr. Danilyuk possessed this type of authority. Although Mr. Danilyuk apparently had the authority to recommend disciplinary action against plaintiff in his position as Fiber Foreman, even planitiff's fiancé states that no Foreman, including himself, had the authority to terminate or discipline an employee without Mr. Tungate's consent. (Dkt. #19 at 2). The only evidence presented by plaintiff that Mr. Danilyuk's recommendation would have any particular weight with Mr. Tungate is that of her own, and Mr. Rego's, opinion that Mr. Tungate would follow Mr. Danilyuk's recommendations because they attended church together and were good friends. To the extent that this Court must consider such self-serving statements, the Court finds that such opinion cannot raise an issue of material fact to defeat summary judgment. *See Block v. City of Los Angeles*, 253 F.3d 410, 419 n. 2 (9th Cir. 2001) (explaining that a party cannot create a genuine issue of material fact to survive summary judgment by contradicting an earlier version of events). Thus, the Court is not persuaded that Mr. Danilyuk was plaintiff's supervisor for Title VII purposes.

As noted above, an employer is liable for a co-worker's harassment only if, after the employer learns of the alleged conduct, he fails to take adequate remedial measures. *Yamaguchi*, 109 F.3d at 1483. These measures must include immediate and corrective action reasonably calculated to (1) to end the current harassment; and (2) deter future harassment from the same offender or others. *Fuller v. City of Oakland, Cal.*, 47 F.3d 1522, 1528 (9th Cir.

ORDER
PAGE – 10

1995) (citing *Ellison v. Brady*, 924 F.2d 872, 882 (9th Cir. 1991)). In *Ellison*, the Ninth Circuit Court of Appeals held that to avoid liability an employer must take at least some form of disciplinary action against a harassing co-worker in order to prevent future workplace sexual harassment. *Ellison*, 924 F.2d at 881-82 ("employers send the wrong message to potential harassers when they do not discipline employees for sexual harassment" and "employers have a duty to 'express[] strong disapproval' of sexual harassment, and to 'develop[] appropriate sanction.'" (quoting 29 C.F.R. § 1604.11(f))); *see also Fuller*, 47 F.3d at 1529; *Intlekofer v. Turnage*, 973 F.2d 773, 777 (9th Cir. 1992). Failing to "take even the mildest form of disciplinary action" renders the remedy insufficient under Title VII. *Ellison*, 924 F.2d at 882. The adequacy of the employer's response depends on the seriousness of the sexual harassment. *Id.*

In this case, plaintiff has failed to respond to defendant's co-worker liability argument, instead focusing all of her energies on her vicarious liability theory. Thus, it appears to the Court she has conceded that defendant has no liability for co-worker sexual harassment.

Likewise, the Court finds that there can be no co-worker liability in this case. There is no evidence that defendant was aware of Mr. Danilyuk's conduct toward plaintiff prior to July 17, 2003. Although she often complained to her fiancé, both plaintiff and her fiancé made a conscious decision not to make any formal complaints. When defendant did learn of plaintiff's sexual harassment complaints, defendant immediately separated plaintiff from Mr. Danilyuk and placed her in a comparable position at another location. Defendant's HR staff then conducted an investigation, interviewing all of the people plaintiff listed as witnesses with first-hand knowledge of the situation between her and Mr. Danilyuk, and eventually reprimanded Mr. Danilyuk for his conduct. After the investigation was concluded, defendant continued to provide work to plaintiff apart from Mr. Danilyuk. She was eventually laid off, at her own request, when business industry slowed significantly during the summer of 2003. On these facts, the Court agrees that plaintiff's sexual harassment claims must be dismissed.

ORDER
PAGE – 11

      *2. Retaliation*

Plaintiff next claims that Mr. Danilyuk retaliated against her by making performance complaints about her to defendant, and then defendant retaliated against her by reducing her work hours. Title VII prohibits retaliation against an employee for opposing unlawful discrimination. 42 U.S.C. § 2000e-3(a). To make out a *prima facie* case of retaliation, plaintiff must show that (1) she engaged in a protected activity, such as the filing of a complaint alleging sexual harassment; (2) defendant subjected her to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. *See Manatt*, 339 F.3d at 800 (quoting *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000)); *Brooks*, 229 F.3d at 928. If plaintiff makes a *prima facie* case, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse action, and plaintiff then bears the ultimate burden of demonstrating that this reason is pretextual. *Manatt*, 339 F.3d at 800. The WLAD is similar. *Allison v. Housing Auth.*, 118 Wn.2d 79, 95 (1991).

Even assuming that plaintiff could make a *prima facie* case of retaliation here, her claim fails for other reasons. Defendant has articulated a legitimate, nondiscriminatory reason for reducing her work hours. Defendant notes that work in the construction industry is rarely, if ever, continuous year-round. Plaintiff herself admitted during deposition that construction work is seasonal, and she had never known anyone who had continuously worked full time throughout their careers in the construction industry. Further, defendant has produced evidence from the IBEW, plaintiff's union, that work had significantly slowed in the industry during 2003, and that it was a very bad year for wiremen and technicians. Plaintiff has failed to rebut this evidence, and therefore cannot demonstrate that defendant's stated reason is pretextual, or that there is any genuine issue of material fact with respect to the question of whether defendant's stated reason is pretextual. The fact that defendant offered to reinstate plaintiff simply reflects that work may have become available in late September, not that her previously reduced work schedule was pretextual. Accordingly, the Court agrees with defendant that plaintiff's retaliation

claims must be dismissed.

*3. Damages*

Because the Court is dismissing plaintiff's claims in their entirety, it is not necessary to address defendant's damages arguments.

## **CONCLUSION**

The Court, having considered defendant's motion for summary judgment, plaintiff's opposition, defendant's reply, the declarations and evidence in support of those briefs, and the remainder of the record, hereby finds and ORDERS:

(1) Defendant's Motion for Summary Judgment (Dkt. #12) is GRANTED, and this case is DISMISSED.

(2) The Clerk shall send a copy of this Order to all counsel of record.

DATED this 9th day of February, 2007.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER
PAGE – 13